## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOARD OF TRUSTEES, PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 74 PENSION FUND, et al., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )       Civil Action No. 21-503-MN ) |
| MEP NATIONWIDE, LLC, | ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiffs Board of Trustees, Plumbers and Pipefitters Local Union No. 74 Pension Fund ("Pension Fund"), Board of Trustees, Plumbers and Pipefitters Local Union No. 74 Annuity Fund ("Annuity Fund"), Board of Trustees, Plumbers and Pipefitters Local Union No. 74 Welfare Fund ("Welfare Fund"), Board of Trustees, Plumbers and Pipefitters Local Union No. 74 Scholarship Fund ("Scholarship Fund"), Board of Trustees, Plumbers and Pipefitters Local Union No. 74 Apprenticeship Fund ("Apprenticeship Fund," and together with the Pension Fund, Annuity Fund, Welfare Fund and Scholarship Fund, "the ERISA Funds"), Pipefitters Local No. 74 Educational/PAC and Building Funds (together with the ERISA Funds, the "Funds"), as well as Local Union No. 74 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO (the "Union," and together with the Funds, "Plaintiffs"), presently before the Court is Plaintiffs' motion for default judgement ("Motion"), filed pursuant to Federal Rule of Civil Procedure 55(b)(2), in which Plaintiffs seek such a judgment against Defendant MEP Nationwide, LLC ("Defendant").  (D.I. 10)  For the reasons that follow, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.

I.      **BACKGROUND**

Plaintiffs commenced this action on April 6, 2021, in which they sought, *inter alia*, the following relief against Defendant:  (1) in Count I, payment for certain unpaid contributions that were allegedly due to the Funds, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C. §§ 1132(g) & 1145; (2) in Count II, payment of damages allegedly owed by Defendant due to its failure to make the above-referenced contributions, pursuant to a breach of contract theory, *see* 29 U.S.C. § 185 ("Section 185"); and (3) in Count III, an order requiring Defendant to submit to an audit of its records as to related matters.  (D.I. 1)[1]  After being served with the Complaint, Defendant did not file an Answer, nor did it otherwise appear or mount a defense in the action.  Thus, at Plaintiffs' request, on June 7, 2021, the Clerk of Court entered a default as to Defendant pursuant to Rule 55(a).  (D.I. 5)

Plaintiffs filed the Motion on December 14, 2021, along with an opening brief in support.  (D.I. 10; D.I. 11)  The Motion was thereafter referred to the Court for resolution on January 11, 2022 by United States District Judge Maryellen Noreika.  (D.I. 12)  The Court held an evidentiary hearing ("the hearing") on the Motion on May 2, 2022.  (D.I. 13; *see also* Transcript of May 2, 2022 Hearing (hereinafter, "Tr."))  During the hearing, the Court raised certain questions regarding the relief that Plaintiffs were seeking in their proposed Judgment, (D.I. 10-1; at the conclusion of the hearing, Plaintiffs' counsel sought the ability to file a supplemental brief (the "supplemental brief") in order to further augment the record in this regard.  The Court granted this request, and Plaintiffs filed their supplemental brief on June 1, 2022.  (D.I. 14)

---

[1]      The Complaint also includes certain requests for post-audit relief (in Counts IV and V) and a claim for conversion (in Count VI).  (D.I. 1)  In terms of the default judgment requested at this stage, however, Counts I to III are the most pertinent counts.

Because Plaintiffs' supplemental brief made reference to certain damages amounts that were inconsistent with those contained in Plaintiffs original proposed Judgment, (*see, e.g.*, D.I. 14 at 10-12), the Court requested that Plaintiffs submit an amended proposed form of Judgment that tracked their current requests for relief.  Plaintiffs filed an amended proposed Judgment (the "amended proposed Judgment") on July 19, 2022.  (D.I. 15)[2]

## II.    STANDARD OF REVIEW

Entry of a default judgment is a two-step process.  First, the Clerk of the Court must enter a default, which occurs "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  After entry of default, if the relief sought against the defaulted party is not for a "sum certain or a sum that can be made certain by computation," then the party seeking default must apply to the court for the entry of a default judgment.  Fed. R. Civ. P. 55(b)(1)-(2).

The decision to enter a default judgment is within the discretion of the court.  *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).  The court's determination as to whether to grant this type of motion is guided by three considerations:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).[3]

---

[2]        Unless otherwise set out below, references to Plaintiffs' proposed Judgment will be to the amended proposed Judgment that Plaintiffs submitted on July 19, 2022.

[3]        In their briefing, Plaintiffs do not explicitly discuss these three considerations; instead, their briefing is focused on demonstrating the type and amount of relief that Plaintiffs believe is owed to them.  The Court is required to consider these factors, however, *see U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984); *Emerson Radio Corp. v.*

A party who defaults by failing to plead or defend admits the allegations in the complaint related to the claims, but does not admit the allegations in the complaint as to the amount of damages. *J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016).  In assessing a motion for a default judgment, the court should take the necessary steps to establish damages with reasonable certainty.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *Palmer v. Slaughter*, No. Civ.A. 99-899-GMS, 2000 WL 1010261, at *2 (D. Del. July 13, 2020); *WM Capital Partners XXXIV, LLC v. Bartholomew*, CIVIL ACTION NO. 15-06225, 2017 WL 118110, at *9 (E.D. Pa. Jan. 12, 2017).

## III.    DISCUSSION

---

*Emerson Quiet Kool Co., Ltd.*, C.A. No. 20-1652, 2022 WL 1156194, at *2 (D. Del. Apr. 19, 2022), and so it will do so here.

In the Court's view, the record is sufficient to establish that these considerations weigh in favor of entry of a default judgment.  With regard to the first consideration, there is obvious prejudice here in the absence of entry of a default judgment, in that because Defendant utterly failed to participate in the pre-trial process, if a default judgment were not obtained, there would be no other avenue for Plaintiffs to obtain relief for their claims.  *See Emerson*, 2022 WL 1156194, at *2; *S.E.C. v. Krimm*, 1:17-CV-464, 2019 WL 2270437, at *5 (D. Del. May 28, 2019); *Tristrata Tech., Inc.*, 270 F.R.D. at 164.  As to the second consideration, Defendant did not file an Answer, and so it is hard to know whether it would have a meritorious defense.  That renders this consideration inconclusive.  *See Hill v. Williamsport Police Dept.*, 69 F. App'x 49, 52 (3d Cir. 2003); *Tristrata Tech., Inc.*, 270 F.R.D. at 164.  With regard to the third consideration, there is evidence to indicate that Defendant's delay in participating in this action is due to willful or bad faith conduct.  *See Emerson*, 2022 WL 1156194, at *4.  Defendant was served with the Complaint in May 2021, over one year ago.  (D.I. 3; D.I. 5 at ¶¶ 2, 4)  At no point in that lengthy period of time has Defendant had counsel enter an appearance in the case; no answer was filed, and no other attempt to defend has been made.  This appears to be a willful attempt not to participate in the litigation.  *Cf. Krimm*, 2019 WL 2270437, at *5; *Tristrata Tech., Inc.*, 270 F.R.D. at 164.  With two of the factors supporting Plaintiffs' Motion and one being inconclusive at best for Defendant, these considerations militate in favor of entry of a default judgment.

As was noted above, the Clerk of the Court entered an Entry of Default against Defendant on June 7, 2021. (D.I. 5) Thus, step one of the two-part default judgment process has been satisfied. At step two, Plaintiffs' Motion seeks a judgment in the form of: (1) $41,425.30 in damages regarding unpaid contributions (through November 2020), (D.I. 14 at 11; D.I. 15 at ¶ 2); (2) pre-judgment interest in the amount of $13,234.46 (through June 30, 2022), as well as post-judgment interest, (D.I. 15 at ¶¶ 2, 3, 5); (3) liquidated damages in the amount of $8,035.44, (D.I. 14 at 11; D.I. 15 at ¶ 2); and (4) attorneys' fees in the amount of $35,971.93 (through July 19, 2022), (D.I. 15 at ¶¶ 2, 5). Plaintiffs also request that Defendant and all persons acting on behalf or in conjunction with Defendant be required to submit to an audit of Defendant's wage, payroll and personnel records, as is further discussed below. (D.I. 15 at ¶ 6) The Court will address each of these forms of requested relief in turn.

### A.      Unpaid Contributions

Plaintiffs first seek $41,425.30 in damages in the form of unpaid contributions from April 2020 through November 2020.[4] (D.I. 14 at 11-12; D.I. 15 at ¶ 2) With regard to that request, Plaintiffs explained that pursuant to a collective bargaining agreement between the Union and Defendant (the "Labor Contract"), Defendant was required to submit remittance reports and pay contributions to Plaintiffs for time worked by or paid to covered employees. (D.I. 11 at 4, 16) The Labor Contract sets forth a particular required contribution rate per employee as to each of

---

[4]      In Plaintiffs' Complaint, Plaintiffs assert that unpaid contributions are owed for "the periods March 2015 through December 2015" and "January 2016 through December 2018[.]" (D.I. 1 at ¶ 26) This appears to the Court to be a mistake, because: (1) Plaintiffs' amended proposed Judgment seeks only contributions owed for the period between April 2020 and November 2020, (D.I. 15 at ¶ 3(a)); (2) Defendant only signed the contract at issue here in December 2019, (D.I. 11, ex. 1); and (3) Defendant only became active in the relevant jurisdiction in April 2020, (Tr. at 24).

various Funds (with the exception of the "UA Organizing Fund," as is further set out below) for which Plaintiffs seek damages here.  (D.I. 11, ex. 1 at Art. VIII[5] at §§ 4-12)[6]  Pursuant to the allegations in the Complaint, now deemed admitted, Defendant's failure to pay over these contributions—contributions required by the "Labor Contract" or by "other documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents of the Funds"—entitles Plaintiffs' to recoup these monies by way of a damages award.  (D.I. 1 at ¶¶ 23-27; *see also* Tr. at 13-19)

During the hearing, the Court walked through with Plaintiffs' counsel where each of the various Funds on whose behalf Plaintiffs are seeking damages are actually referenced in Article VIII of the Labor Contract (with the exception of the "UA Organizing Fund").  (*Compare* D.I. 15 at ¶ 2, *with* D.I. 11, ex. 1 at Art. VIII; *see also* Tr. at 15-18)  These are, respectively:  the Welfare Fund, Pension Fund, Annuity Fund, Apprenticeship Fund and Scholarship Fund, as well as an "Education Fund," a "PAC Fund," a "Building Fund," an "Industry Advancement Fund", and a fund for "Dues."  (*Id*.)  As to each of these Funds, the Labor Contract also explains how relevant contribution amounts are to be calculated.  (D.I. 11, ex. 1 at Art. VIII)

---

[5]     Although Plaintiffs' opening brief occasionally refers to Article "VII" as the Article in the Labor Contract that obligates Defendant to make these contributions, it is in fact Article VIII that does so.  (Tr. at 14)

[6]     Plaintiffs' amended proposed judgment makes reference to two different amounts of unpaid contributions owed—one amount allegedly owed pursuant to alleged ERISA violations referenced in Count I, pursuant to 29 U.S.C. §§ 1132(g) & 1145, and one amount allegedly owed pursuant to the breach of contract theory referenced in Count II, pursuant to Section 185.  (D.I. 15)  The second amount is larger than the first amount (because a few of the Plans as to which contributions are sought therein are not ERISA plans) and it thus correlates with Plaintiffs' ultimate request for unpaid contribution-related damages here.  (Tr. at 8-9; D.I. 11 at 14-16)  For that reason, the Court will assess Plaintiffs' request for damages in the form of unpaid contributions solely pursuant to Count II's Section 185 claim.

6

However, because the Court could not see any reference in the Labor Contract to a UA Organizing Fund, it asked Plaintiffs' counsel to explain, via its supplemental brief, how Defendant was obligated to make contributions regarding that particular Fund pursuant to, *inter alia*, the breach-of-contract-rationale set out in Count II of the Complaint.  (Tr. at 17-18)  In their supplemental brief, Plaintiffs:  (1) confirmed that the UA Organizing Fund is not referenced by name in the Labor Contract; (2) stated that the UA Organizing Fund is "not funded by employers but instead by withholding from employee pay (similar to the checkoffs authorized in Art. VIII, Section 10 of the CBA)"; (3) stated that a "rate of ten cents per hour worked was authorized at a meeting of the Union" in June 2019 and was "agreed to by respective business manager[s] of the Union and the chair of the [Delaware Mechanical Contractors Association, or 'DMCA']"; and (4) asserted that a rate sheet setting out this rate is "deemed to be incorporated into the [Labor Contract] and therefore binding on Defendant."  (D.I. 14 at 10)

This (very brief) explanation was not sufficient for the Court to understand how damages in the form of unpaid contributions owed to the UA Organizing Fund necessarily flow from the now-admitted breach of contract allegations in Count II.  Defendant did sign the Labor Contract with the Union, but nothing in that contract references the UA Organizing Fund directly.  Count II makes reference to other documents being incorporated into the Labor Contract, such as "Trust Agreements" or "plan documents of the Funds" but it is not clear how any of the documents that purportedly bind Defendant with regard to these asserted UA Organizing Fund-related damages are "Trust Agreements" or "plan documents of the Funds."  And as for the assertion that the rate sheet is "deemed to be incorporated" into the Labor Contract, Plaintiffs simply did not provide

the Court with enough argument or explanation to understand how it is that this is said to be so.[7]
Therefore, because the asserted basis for damages regarding the UA Organizing Fund does not
appear to be explicitly captured by the contractual provisions of the Labor Contract or the
allegations in Count II, and because such a basis has not otherwise been provided to the Court by
Plaintiffs, below the Court will not recommend that damages relating to that Fund ($95.29 in
unpaid contributions, plus $30.39 in interest and $9.53 in liquidated damages) be awarded.  (D.I.
14 at 11-12; D.I. 15 at ¶ 2)

With regard to the remaining Funds/alleged contributions owed, Plaintiffs seek a total of
$41,330.01.  (*Id*.)  In order to establish that this amount of unpaid contributions is owed,
Plaintiffs attached to their opening brief the sworn declaration of Scott A. Ernsberger (the
"Ernsberger Declaration"); Mr. Ernsberger is employed by Zenith American Solutions
("Zenith"), the contract third party administrator to the Funds.  (D.I. 11, ex. 6; *see also* Tr. at 22)
Additionally, during the hearing, Mr. Ernsberger provided sworn testimony in which he
explained how he determined that the requested amounts of unpaid contributions/damages were
owed.  More specifically, Mr. Ernsberger stated that:

> (1)  Zenith confirmed—by way of conversations with the Union
> and from communications from certain of Defendant's own
> covered employees—that Defendant had Union employees who
> continued to work in the relevant jurisdiction between April 2020

---

[7]     For this proposition, Plaintiffs simply cited to one case from the United States
Court of Appeals for the Ninth Circuit.  In that case, the Ninth Circuit found that there was
substantial evidence to support the conclusion that a particular schedule was incorporated into a
collective bargaining agreement—evidence including witness testimony and documentary
evidence.  *See Delta Sandblasting Co., Inc. v. Nat. Labor Relations Bd*., 969 F.3d 957, 963-65
(9th Cir. 2020).  Here, in contrast, Plaintiffs have provided no such evidence that makes it clear
to the Court how any of the cited documents regarding UA Organizing Fund contributions were
incorporated by reference into the Labor Contract.

and November 2020, but for whom Defendant had not submitted remittance reports and contributions to the Funds.[8];

(2)  Zenith obtained paystubs from certain of these employees during the months in question, substantiating the hours that these employees actually worked; and

(3) Zenith then took these paystubs, confirmed that the hours and gross wages referenced therein had not been reported by Defendant, calculated what monies Defendant should have submitted to the Funds as to these employee hours (using the rates and designations set out in the Labor Contract for each Fund) and then created a report reflecting those amounts.

(D.I. 11, ex. 6 at ¶ 7(a)-(b); D.I. 14 at 11-12; Tr. at 23-36)  Excluding the UA Organizing Fund, the amount Zenith determined was owed to the Funds for the time period in question, using this methodology, was the $41,330.01 referenced above.  (D.I. 11, ex. 6 at ¶ 7(b); D.I. 14 at 11-12)

In light of Mr. Ernsberger's testimony, the Court concludes that there is sufficient basis to demonstrate that this amount of unpaid contributions is owed in damages to the Funds (through November 2020).  *See, e.g., State Bank & Tr. Co. v. Philly Wholesale, LLC*, CIVIL ACTION No. 16-05508, 2017 WL 4222936, at *1 (E.D. Pa. Sept. 22, 2017).  It thus recommends that the District Court award $41,330.01 in damages for unpaid contributions owed.

## B.    Liquidated Damages

Plaintiffs are seeking liquidated damages equalling $8,035.44.  (D.I. 14 at 12; D.I. 15 at ¶ 2)  Essentially, this amount represents a request for:  (1) 10% of the unpaid contributions in liquidated damages as to all Funds at issue; and (2) an additional 10% (for a total of 20%) of the

---

[8]    Defendant did submit remittance reports and contributions for certain Union employees from mid-May 2020 through June 2020; those employee hours are not included in Mr. Ernsberger's calculations.  (Tr. at 24, 29)

unpaid contributions in liquidated damages as to the five ERSIA Funds at issue (the Pension Fund, Annuity Fund, Welfare Fund, Scholarship Fund and Apprenticeship Fund).[9]

In support of this request, Plaintiffs note that pursuant to Article VIII, Section 12.A of the Labor Contract, if remittance reports and Fund payments are not received or postmarked by the 28th day of the month following the month covered by such reports, then Defendant contractually owes liquidated damages in the amount of 10% of the required payment. (D.I. 11, ex. 1 at Art. VIII at § 12.A; D.I. 14 at 10-11) Plaintiffs also note that, *inter alia*, Section 502(g)(2) of ERISA provides that if judgment in favor of an ERISA plan is awarded, then a court shall also award the plan liquidated damages provided for under the plan "not in excess of 20 percent . . . of the amount determined by the court [as the amount owed for unpaid contributions.]" 29 U.S.C. § 1132(g)(2) (*cited in* D.I. 14 at 11). They also show how, as to the five relevant ERISA plans in question, those plans in turn specify that the Board of Trustees of

---

[9]     Plaintiffs' original proposed Judgement sought a total of $8,288.23 in liquidated damages. (D.I. 10-1 at ¶ 2) In their supplemental brief, Plaintiffs stated that they later determined that this amount was a mistake and that they now sought only $8,035.44 in damages. (D.I. 14 at 11 & n.5) Then in their amended proposed Judgment, Plaintiffs sought $8,035.46 in liquidated damages. (D.I. 15 at ¶ 2) Plaintiffs do not explain why the latter two numbers diverge.

From comparing the chart listed on page 12 of Plaintiffs' supplemental brief with the charts listed in Plaintiffs amended proposed Judgment, it appears that (again, without explanation), Plaintiffs included different amounts of unpaid contributions in the supplemental brief for the Welfare Fund and Annuity Fund than they did in the amended proposed Judgement (and their original proposed Judgment). (*Compare* D.I. 14 at 12, *with* D.I. 10-1 & D.I. 15) The amounts of unpaid contributions in the respective Judgments are the amounts that Mr. Ernsberger's testimony were based on, and so those are the amounts of unpaid contributions that the Court will utilize here. When one relies on those amounts of unpaid contributions, and then assesses the types of liquidated damages that Plaintiffs are seeking (i.e., 10% as to all Funds, and an additional 10% as to the five ERISA funds), it appears to the Court that the correct amount of liquidated damages that Plaintiffs really mean to seek is $8,035.44. And so that is the figure the Court will consider below.

those funds may make special rules relating to employers like Defendant, including as to the assessment of liquidated damages for unpaid contributions. (D.I. 11, ex. 2 at Art. VII at § 7.01; *id*., ex. 3 at Art. VII at § 7.26; *id*., ex. 4 at Art. VII at § 7.01; D.I. 14, ex. 13 at Art. IV at § 4.08; *id*., ex. 14 at 7-8; *see also id*., ex. 6 at ¶ 7(c); D.I. 14 at 11) Lastly, Plaintiffs point to one such document that sets out such "special rules"—a document titled "Plumbers and Pipefitters Local Union No. 74 Funds Policy for the Collection of Contributions Owed to the Funds" (the "Collection Policy"); in the Collection Policy, the Trustees of the Pension Fund, Annuity Plan, Welfare Fund and Scholarship Fund authorized that for any employer whose contributions remain unpaid after the 28th day of the second month after the contribution obligation was incurred, that employer must pay liquidated damages of an additional 10% of the required unpaid contributions. (D.I. 11, ex. 5 at § 5; *id*., ex. 6 at ¶ 6; D.I. 14 at 11)

Of the $8,035.44 that Plaintiffs are seeking for liquidated damages, $4,142.53 of that total amounts to 10% of all of the unpaid contributions owed to Welfare Fund, Pension Fund, Annuity Fund, Apprenticeship Fund, Scholarship Fund, Education Fund, PAC Fund, Building Fund, Industry Advancement Fund, UA Organizing Fund, and for Dues. (D.I. 14 at 11-12) The Court has already explained why it will not recommend that a damages award include monies relating to the UA Organizing Fund; taking this amount ($9.53) out of the $4,142.53 total leaves one with $4,133.00. (*Id*.) As to all of this amount, the Court can see, at a minimum, how it is money owed pursuant to Count II's breach of contract-related allegations.

The remainder of the amount sought in liquidated damages is $3,892.91; these are an additional 10% of damages owed and never paid regarding the five ERISA plans at issue (the Welfare Fund, Pension Fund, Annuity Fund, Apprenticeship Fund and Scholarship Fund). (*Id.*) The Court sees how, pursuant to Section 502(g)(2) of ERISA, Plaintiffs *could* obtain an

11

additional 10% in liquidated damages as to these five funds, so long as such damages are "provided for under the plan[.]"  29 U.S.C. § 1132(g)(2).  As noted above, Plaintiffs provided the Court with the ERISA plan documents for the five ERISA Funds at issue.  When one reads portions of those plan documents together with the Collection Policy, the Court can understand how an additional 10% in liquidated damages is authorized—at least as to the four ERISA plans/Funds who are actually parties to the Collection Policy (i.e., the Pension Fund, Annuity Plan, Welfare Fund and Scholarship Fund).  (D.I. 11, ex. 2 at Art. VII at § 7.01; *id*., ex. 3 at Art. VII at § 7.26; *id*., ex. 4 at Art. VII at § 7.01; D.I. 14, ex. 13 at Art. IV at § 4.08; *id*., ex. 14 at 7-8; *see also* D.I. 11, ex. 5 at § 5)  But the fifth plan/Fund—the Apprenticeship Fund—does not appear to be a party to the Collection Policy.  (D.I. 11, ex. 5 at 1 ("The undersigned Trustees . . . of the Plumbers and Pipefitters Local Union No. 74 Pension, Annuity, Welfare, and Scholarship Funds ('the Funds') . . . amend and restate the Board's policy for collection of employer contributions owed to the Funds[.]"))  And so the Court does not understand how Plaintiffs have shown that an additional 10% in liquidated damages is authorized under ERISA as to the Apprenticeship Fund.

Similarly, the Court has not been provided with sufficient information to see how these additional liquidated damages for the the Apprenticeship Fund could be obtained pursuant to Count II's breach of contract claim.  The Labor Contract does state that signatories agree to be bound by the terms of the plans/trust agreements, and each of the five relevant plan/trust agreements seem to allow the respective Funds' Boards of Trustees to permit additional amounts of liquidated damages to be imposed beyond an initial 10% figure.  But it is the Collection Policy that Plaintiffs are pointing to as the document that *actually provides for* an additional 10% amount in liquidated damages here.  And that Collection Policy does not appear to facially apply

12

to the Apprenticeship Fund.  So the Court can only recommend that an additional $3,785.87 (representing an additional 10% of liquidated damages owed regarding the Welfare Fund, Pension Fund, Annuity Fund and Scholarship Fund) be paid in damages.

In total, then, the Court recommends that liquidated damages be awarded in the amount of $7,918.87.

### C.    Interest

Plaintiffs are seeking damages in the form of interest in the amount of $13,234.46, through June 30, 2022, pursuant to the breach of contract claim in Count II.  (D.I. 15 at ¶ 2; Tr. at 42-43)  These monies relate to interest allegedly owed (1.5% per month on contributions that remain unpaid more than one month from the due date) as to the unpaid contributions referred to in Section III.A for the period through June 30, 2022.  (D.I. 15 at ¶ 2; *see also* D.I. 11, ex. 6 at ¶ 7(d); Tr. at 45)

In order to show its entitlement to such interest, Plaintiffs are relying on the content of the Collection Policy, wherein that policy describes how such interest can be owed by entities like Defendant.  (D.I. 11 at 18; *id.*, ex. 6 at ¶ 7(d); D.I. 15 at ¶ 2; Tr. at 43; *see also* D.I. 11, ex. 5 at ¶ 5)[10]  The Court can understand, based on the documents provided to it, how the Labor Contract:  (a) incorporates by reference rules and regulations contained in the respective trust agreements for the Welfare Fund, Pension Fund, Annuity Fund and Scholarship Fund (D.I. 11, ex. 1 at Art. VIII at §§ 4.D, 4.E, 5.D, 5.F, 6 & 8); (b) how those plans/trust agreements expressly

---

[10]    In the amended proposed Judgment, Plaintiffs assert that interest is being sought "in accordance with 26 U.S.C. § 6621 ['Section 6621'] from the date the contributions became due."  (D.I. 15 at ¶ 3(b))  This also appears to be a mistake, as in Count II itself, in the Ernsberger Declaration, in its briefing, and during the hearing, Plaintiffs state that they are seeking interest in accordance with the methodology set out in the Collection Policy, not in Section 6621.  (D.I. 1 at ¶ 27; D.I. 11 at 18; *id.*, ex. 6 at ¶ 7(d); Tr. at 43)

permit the plans' Board of Trustees to make special rules applicable to each employer regarding the assessment of interest, (*id*., ex. 2 at Art. VII at § 7.01; *id*., ex. 3 at Art. VII at § 7.29; *id*., ex. 4 at Art. VII at § 7.01; D.I. 14, ex. 14 at 7-8); and (c) how the terms of the Collection Policy (which calls for interest in the form of 1.5% per month to be paid if collections are unpaid for more than 56 days), adopted by those four Funds, can be said to amount to such a rule, (*id*., ex. 5 at ¶ 5).  But Plaintiffs have not fully explained how they can obtain such interest payments on a breach-of-contract rationale as to the other Funds for which they seek such interest (i.e., the Apprenticeship Fund, Education Fund, PAC Fund, Building Fund, Industry Advancement Fund, UA Organizing Fund and for Dues).  (D.I. 15 at ¶ 2)  There may be such a rationale, but Plaintiffs simply have not provided it to the Court in a way the Court can understand.

Therefore, the Court recommends that the District Court award damages in the form of pre-judgment interest as to unpaid contributions regarding the Pension Fund, Annuity Fund, Welfare Fund and Scholarship Fund.  Mr. Ernsberger explained that he calculated interest using the methodology described in the Collection Policy for those Funds through November 30, 2021; the amount there equaled $8,138.85.  (D.I. 10-1 at ¶ 2; Tr. at 45)  In their amended proposed Judgment, Plaintiffs have upped that figure (without providing any supporting documentation) for the four Funds to $12,091.27, now reflecting interest owed up through June 30, 2022.  (D.I. 15 at ¶ 2)  That said, the Court can infer from the totality of the record that this revised calculation was conducted by Mr. Ernsberger in the same manner as reflected in his testimony, and it thus recommends that $12,091.27 be awarded in pre-judgment interest.[11]

### D.     Attorneys' Fees and Costs

---

[11]     Plaintiffs would also be entitled to post-judgment interest pursuant to, *inter alia*, 28 U.S.C. § 1961.  28 U.S.C. § 1961; (D.I. 15 at ¶ 5(f)).

14

Next, Plaintiffs seek $35,971.93 in damages for attorneys' fees and costs, for the period

from January 6, 2021 through July 19, 2022.  (D.I. 15 at ¶¶ 2-3, 5)  At a minimum, ERISA (i.e.,

the claim in Count I) provides that a prevailing party is entitled to its reasonable attorneys' fees

and costs associated with an action arising out of a defendant failing to pay required

contributions.  *See Bricklayers & Allied Crafts Union Local No. 1 of DE/PA Welfare Fund v.

Edward Wilkinson Co., Inc*., C.A. No. 07-145 GMS, 2008 WL 4948654, at *3 (D. Del. Nov. 19,

2008); *see also* 29 U.S.C. § 1132(g)(2)(D); (Tr. at 47).  Here, having obtained default, Plaintiffs

are, indeed, the prevailing party in this action.  *See Bricklayers*, 2008 WL 4948654, at *3.

In their original proposed Judgment, Plaintiffs were seeking $16,170.75 in attorneys' fees

and costs, for the time period up through December 14, 2021.  (D.I. 10-1 at ¶ 2-3, 5)  In order to

demonstrate the reasonableness of those requested fees and costs, Plaintiffs provided:  (1) a list

showing all relevant work performed by Plaintiffs' outside and Delaware counsel, along with

related costs, for the period through December 14, 2021; and (2) declarations from outside and

Delaware counsel setting out facts regarding the relevant experience of billing counsel and the

reasonableness of their rates.  (D.I. 11, exs. 8-11)  The Court has carefully reviewed these

documents, and finds the requested amounts (which are for far less than the amount of other

damages sought) to be both reasonable and tied to the work performed in this case.  *See United

Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 290-91 (3d Cir.

2007); *Finkel v. INS Elec. Servs. Inc*., No. 06-CV-4862- (SLT)(MDG), 2008 WL 941482, at *11

(E.D.N.Y. Apr. 4, 2008); *see also* (Tr. at 47-49).

However, in their amended proposed Judgment, Plaintiffs have now added in a request

for an additional $19,801.18 in attorneys' fees and costs, without making any showing as to what

those fees or costs were for (and thus why they are reasonable).  (D.I. 15 at ¶¶ 2-3, 5); *see also*

*United Auto. Workers Local 259*, 501 F.3d at 291 ("In requesting . . . attorneys' fees, specificity is critical."). The Court will thus not recommend that these fees and costs be awarded now.

Accordingly, the Court recommends that the District Court award damages in the amount of $16,170.75 for attorneys' fees and costs.

### E.    Audit

Lastly, Plaintiffs ask the Court to order that Defendant and its officers, agents, servants, employees, attorneys, and all persons acting on behalf of or in conjunction with Defendant be required to submit to an audit of its wage, payroll and personnel records for all periods in which Defendant is obligated to contribute to the Plaintiffs, and to do so within 20 days of a demand by Plaintiffs. (D.I. 14 at 7-10; D.I. 15 at ¶ 6)  In their opening brief, Plaintiffs did not provide any explanation as to the basis for this request, nor as to the District Court's authority to order that such relief be granted. (D.I. 11)  After the Court inquired about this at the hearing, (Tr. at 49-50), Plaintiffs did so in their supplemental brief, (D.I. 14 at 7-10).

Plaintiffs have demonstrated how, in the trust agreements for the Pension Fund, Welfare Fund and Annuity Fund, the documents each provide that the Board of Trustees for those plans has the power to: (1) examine/audit Defendant's payroll and employment records, in order to determine compliance with the agreement; and (2) have an accountant enter the employer's premises during business hours upon request, for the purpose of inspecting such records and making copies of those records. (D.I. 11, ex. 2 at Art. V at § 5.02; *id*., ex. 3 at Art. VII at § 7.25; *id*., ex. 4 at Art. V at § 5.02; *see also id*., ex. 5 at ¶ 13; D.I. 14 at 7-8)  Additionally, ERISA provides that a court may order "such other legal or equitable relief" as it deems appropriate to a prevailing party, 29 U.S.C. § 1132(g)(2)(E), and various district courts have ordered a defendant to be subject to such an audit in circumstances similar to those here, *see, e.g., Bd. of Trustees of*

16

*Laborers' Dist. Council Constr. Indus. Pension Fund v. VG Concrete, LLC*, CIVIL ACTION NO. 19-04642, 2020 WL 610013, at *2 (E.D. Pa. Feb. 7, 2020); *Int'l Union of Operating Engineers of E. Pennsylvania & Delaware Benefit Pension Fund v. N. Abbonizio Contractors, Inc.*, 134 F. Supp. 3d 862, 867 (E.D. Pa. 2015); *Gesualdi v. Giacomelli Tile Inc*., No. CV10-4841 (ADS)(WDW), 2011 WL 4352548, at *2-4 (E.D.N.Y. Aug. 18, 2011), *report and recommendation adopted*, 2011 WL 4356157 (E.D.N.Y. Sept. 16, 2011).  Additionally, Mr. Ernsberger explained in his testimony how and why an audit of the requested type will likely uncover additional unpaid contributions owed to Plaintiffs.  (Tr. at 26-28)

For these reasons, the Court recommends that the District Court grant Plaintiffs' request for an audit in the form sought in the proposed Judgment, for the period of April 2020 through to the present.  (D.I. 15 at ¶ 6)

## IV.    CONCLUSION

For all of the above reasons, the Court recommends that the District Court GRANT-IN-PART and DENY-IN-PART the Motion pursuant to Rule 55(b)(2) in the manner set out in this Report and Recommendation.  After the District Court reviews and adjudicates this Report and Recommendation, it can then order Plaintiffs to submit a further amended form of Judgment that reflects the District Court's decision on the appropriate amount and type of damages and other relief that should be provided at this time.  The District Court can then sign that Judgment pursuant to Federal Rule of Civil Procedure 58.

Plaintiffs shall serve a copy of this Report and Recommendation on Defendant in the same manner that Plaintiffs served the Defendant with the Complaint, and shall file proof of such service with the Court.

17

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  July 26, 2022

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE